UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

QUINTON JAMAL DANIELS #657826,          Case No.  2:20-cv-00235

     Plaintiff,          Hon. Hala Y. Jarbou
            U.S. District Judge

 v.

ERICA HUSS,

     Defendant.
_____/

## <u>REPORT AND RECOMMENDATION</u>

### I. Introduction

State prisoner Quinton Jamal Daniels has filed a civil complaint that appears to allege only that Defendant – Marquette Branch Prison (MBP) Warden Huss – was negligent.  Daniels's unverified complaint alleges that Warden Huss failed to prevent his exposure to COVID-19.  (ECF No. 1.)  Daniels alleges that he was infected with the COVID-19 virus in October 2020 due to Warden Huss's negligence.

Daniels alleges that Warden Huss knew about the risk of COVID-19 before the outbreak at MBP, and knew that some of the MBP staff had been exposed to COVID-19, but negligently failed to take action to protect other staff and prisoners.  (ECF No. 1, PageID.3.)  Specifically, Daniels says that Warden Huss failed to quarantine prisoners who had tested positive for COVID-19.  Daniels states that Defendant made a couple of rounds in the block and told Plaintiff "one thing," but "then did something totally different."  (*Id.*)  Daniels contracted the virus and then tested positive on October 13, 2020.  (*Id.*)  Daniels states that he was very ill for two weeks with

weakness, fatigue, hot sweats, coughing, runny nose, bloody nose, and body aches. (*Id.*)

Warden Huss treats this case like a Section 1983 action and asks the Court to dismiss Daniels's complaint because he failed to exhaust his administrative remedies via the grievance process before filing his compliant.  (ECF No. 48.)  Daniels has filed a response.  (ECF No. 17.)  Daniels submitted copies of his Step I and Step II grievances and the Michigan Department of Corrections' responses with his complaint.  According to these documents, Daniels was told by the Michigan Department of Corrections (MDOC) that the COVID-19 issue was not a grieveable issue because it was not specific to an individual, but involved the entire prison population.  (ECF No. 1-1.)  Nevertheless, Warden Huss now asks the Court to dismiss Daniels's complaint because he failed to pursue his grievance through Step III.  The undersigned respectfully recommends that the Court deny the motion for summary filed by Warden Huss because she has not shown that Daniels failed to exhaust an administrative remedy that was available to him.

The undersigned, nevertheless, recommends that the Court dismiss Daniels's complaint because he has not stated a federal claim.  As noted above, Daniels asserts that Huss was negligent, which is a state law claim.  Daniels has not asserted facts establishing diversity jurisdiction under 28 U.S.C. § 1332.  Thus, this Court could only exercise supplemental jurisdiction over Daniels's state law claim if the Court has original jurisdiction over some other claim.  28 U.S.C. § 1367.  Daniels's complaint does not state a federal cause of action.  He does not state, for example, that Huss

was deliberately indifferent to the COVID-19 situation, in violation of the Eighth Amendment, which is his only possible Constitutional claim.  Accordingly, the undersigned recommends dismissal of this case because the Court lacks subject matter jurisdiction.

Alternatively, if the Court construed Daniels's claim as a deliberate indifference claim, the undersigned recommends that the Court exercise its authority under 28 U.S.C. §§ 1915(e)(2) and 1915A and 42 U.S.C. § 1997e(c) and dismiss this case because Daniels's claim is frivolous and fails to state a claim on which relief may be granted.

## II. Summary Judgment Standard

The undersigned begins with Warden Huss's motion for summary judgment. Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions

---

[1]    Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury.  *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

3

on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative

process.  *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).   "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218-19.  In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524.  In the Court's view, this objective was achieved in three ways.  First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Id.* at 525.  Second, "the internal review might 'filter out some frivolous claims.'"  *Id.* (quoting *Booth*, 532 U.S. at 737*).  And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims

5

internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept.

25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

Daniels attached to his complaint his Step I grievance, his Step II appeal, and the responses he received for grievance **MBP 20-10-1334-27B** to his complaint. (ECF No. 1-1, PageID.10-14.)  Daniels asserted that due to the open bar cell system, he was exposed and tested positive to COVID-19.  (*Id.*, PageID.11.)  The Step I response Daniels received is shown below:



(ECF No. 1-1, PageID.11.)

Daniels filed a Step II appeal of this response, and Defendant Warden Huss responded by rejecting the appeal as not presenting a grievable issue.  Her response is shown below.

---

[2]     In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."  *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

| Name (Print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Daniels | 657826 | MBP | G=52 | 10/13/20 | 10/31/20 |

**STEP II — Reason for Appeal**

Due to the covid-19 I caught in MBP (G unit) because of the open bar setting from my fellow prisoners. This cruel & unusal punishment by the staff from not taking action during this prison outbreak Im still having body aches which is my pain & suffering.

**STEP II — Response**

Date Received by Step II Respondent: 11-2-2020

A review of your Step II appeal has been completed.  I have also reviewed your Step I grievance and the response. Your grievance was rejected because you are grieving the content of PD 03.02.130 *Prisoner/Parolee Grievances* (E) "Grievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant" which is a non-grievable issue according to PD 03.02.130 *Prisoner/Parolee Grievances*. It is not specific to you but rather the prison population as a whole. The response at Step I is supported and your appeal is denied.

Erica Huss, Warden
Respondent's Name (Print)

Respondent's Signature     11/6/2020
Date

Date Returned to Grievant: 11-16-2020

(*Id.*, PageID.10.)

Daniels then received a memorandum, shown below, directing him to present his "non-grievable" issue to the Warden's Forum.

## MICHIGAN DEPARTMENT OF CORRECTIONS

### *"Committed to Protect, Dedicated to Success"*

### *MEMORANDUM*

Your grievance is being rejected in accord with PD 03.02.130 "Prisoner/Parolee Grievances," as a non-grievable issue.  It is not specific to you, but rather the prison population as a whole.

Proper Procedure is to direct comments to the Warden's Forum as provided for in PD 04.01.150 "Prisoner Housing Unit Representatives/Warden's Forum".

(*Id.*, PageID.14.)

In her motion for summary judgment, Warden Huss asks the Court to conclude that Daniels failed to exhaust his administrative remedies because he did not pursue his grievance through Step III.  In fact, Huss's brief states that "[t]he administrative process applicable to Daniels's grievable claims is governed by MDOC Poly Directive 03.02.130, 'Prisoner/Parolee Grievances.'"  (ECF No. 14, PageID.57.)  Huss then points out that Daniels "did not exhaust any grievances arising out of his October 13, 2020, COVID-19 diagnosis through Step III." (Id., PageID.60.)  Huss cites to Daniels's MDOC Prisoner Step III Grievance Report, which does not list grievance **MBP 20-10-1334-27B**.  (ECF No. 14-3.)  The problem with this argument is that Huss responded to Daniels's grievance at Step II by rejecting the grievance as an issue that cannot be grieved at the prison because COVID-19 affected the entire prison population.  In other words, Defendant is taking an inconsistent position:  first, MDOC told Daniels that he could not file a grievance on his COVID-19 issue; now, Defendant argues that Daniels's complaint should be dismissed because he failed pursue his grievance through Step III.  Daniels was caught in proverbial "Catch-22" situation.[3]

The undersigned also wishes to note that Defendant could have argued that Daniels had another administrative option available:  exhaustion through the Warden's Forum.  Daniels included an MDOC memorandum with his complaint.

---

[3]      "[A] problematic situation for which the only solution is denied by a circumstance inherent in the problem or by a rule."  *See* https://www.merriam-webster.com/dictionary/catch-22 (last visited April 21, 2021).

(ECF No. 1-1, PageID.14.)   The memorandum told him to raise his issue in the Warden's Forum.   Defendant Huss has not, however, offered information showing that Daniels failed to do so.

It is therefore respectfully recommended that the Court deny Defendant's motion for summary judgment.

## IV.  Jurisdiction Over Negligence Claim

This Court would have jurisdiction over Daniels's negligence claim if he had asserted facts establishing diversity jurisdiction.   But Daniels has not asserted facts establishing diversity jurisdiction under 28 U.S.C. § 1332.   Thus, this Court could only exercise supplemental jurisdiction over Daniels's state law claim if the Court had original jurisdiction over some other claim.   28 U.S.C. § 1367.   Daniels's complaint does not appear to state a federal cause of action.   He does not state, for example, that Huss was deliberately indifferent to the COVID-19 situation, in violation of the Eighth Amendment, which is his only possible Constitutional claim based on the general allegations he raises.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.   *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).   As a general rule, a plaintiff proceeding under Section 1983 must allege that the deprivation of his rights was intentional or at least the result of gross negligence. *Davidson v. Cannon*, 474 U.S. 344, 348 (1986).   Mere negligence is not actionable

under Section 1983.  *Chesney v. Hill*, 813 F.2d 754, 755 (6th Cir. 1987).  Accordingly, the undersigned recommends dismissal of this case because the Court lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3).

## V. Daniels's Eighth Amendment Claim

This Court may, alternatively, construe Daniels's complaint as an Eighth Amendment deliberate indifference claim, which would give the Court original jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331.  In that case, the undersigned respectfully recommends dismissal of the case pursuant to the Court's authority under 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e(c).

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Daniels says that Defendant Huss "knew about the COVID-19 before the outbreak at Marquette Branch Prison" and he tested positive on October 13, 2020. (ECF No. 1, PageID.3.)  Daniels says that Warden Huss was negligent for failing to quarantine prisoners with positive COVID-19 test results.  (*Id*.)  Daniels states that Huss did not care about the safety of prison staff or prisoners.  (*Id*.)  Daniels further

asserts that he caught COVID-19 because he was in an "open bar setting" where airborne particles would spread the virus.  (*Id.*)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347.  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).

In a recent case brought by federal prisoners under 28 U.S.C. § 2241, the Sixth

Circuit addressed the issue of whether the Bureau of Prisons (BOP) violated the

Eighth Amendment rights of medically vulnerable inmates at the Elkton Federal

Correctional Institution by failing to adequately protect them from COVID-19

infection. *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020).  In that opinion, the Sixth

Circuit concluded that the plaintiffs had easily satisfied the objective component of

an Eighth Amendment claim:

> In assessing the objective prong, we ask whether petitioners have
> provided evidence that they are "incarcerated under conditions posing a
> substantial risk of serious harm." *Farmer*, 511 U.S. at 834.  The COVID-
> 19 virus creates a substantial risk of serious harm leading to
> pneumonia, respiratory failure, or death.  The BOP acknowledges that
> "[t]he health risks posed by COIVD-19 are significant."  CA6 R. 35,
> Appellant Br., PageID 42.  The infection and fatality rates at Elkton
> have borne out the serious risk of COVID-19, despite the BOP's efforts.
> The transmissibility of the COVID-19 virus in conjunction with Elkton's
> dormitory-style housing—which places inmates within feet of each
> other—and the medically-vulnerable subclass's health risks, presents a
> substantial risk that petitioners at Elkton will be infected with COVID-
> 19 and have serious health effects as a result, including, and up to,
> death.  Petitioners have put forth sufficient evidence that they are
> "incarcerated under conditions posing a substantial risk of serious
> harm." *Farmer*, 511 U.S. at 834.

*Id.* at 840.

The Sixth Circuit went on to address the subjective prong of an Eighth

Amendment claim, noting that the pertinent question was whether the BOP's actions

demonstrated deliberate indifference to the serious risk of harm posed by COVID-19

in the prison.

> There is no question that the BOP was aware of and understood the
> potential risk of serious harm to inmates at Elkton through exposure to
> the COVID-19 virus.  As of April 22, fifty-nine inmates and forty-six staff
> members tested positive for COVID-19, and six inmates had died.  "We

may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious." *Hope v. Pelzer*, 536 U.S. 730, 738 (2002). The BOP acknowledged the risk from COVID-19 and implemented a six-phase plan to mitigate the risk of COVID-19 spreading at Elkton.

The key inquiry is whether the BOP "responded reasonably to th[is] risk." *Farmer*, 511 U.S. at 844. The BOP contends that it has acted "assiduously to protect inmates from the risks of COVID-19, to the extent possible." CA6 R. 35, Appellant Br., PageID 42. These actions include

> 1.     implement[ing] measures to screen inmates for the virus; isolat[ing] and quarantin[ing] inmates who may have contracted the virus; limit[ing] inmates' movement from their residential areas and otherwise limit[ing] group gatherings; conduct[ing] testing in accordance with CDC guidance; limit[ing] staff and visitors and subject[ing] them to enhanced screening; clean[ing] common areas and giv[ing] inmates disinfectant to clean their cells; provid[ing] inmates continuous access to sinks, water, and soap; educat[ing] staff and inmates about ways to avoid contracting and transmitting the virus; and provid[ing] masks to inmates and various other personal protective equipment to staff.

*Id.* at 42–43.

The BOP argues that these actions show it has responded reasonably to the risk posed by COVID-19 and that the conditions at Elkton cannot be found to violate the Eighth Amendment. We agree.

Here, while the harm imposed by COVID-19 on inmates at Elkton "ultimately [is] not averted," the BOP has "responded reasonably to the risk" and therefore has not been deliberately indifferent to the inmates' Eighth Amendment rights. *Farmer*, 511 U.S. at 844. The BOP implemented a six-phase action plan to reduce the risk of COVID-19 spread at Elkton. Before the district court granted the preliminary injunction at issue, the BOP took preventative measures, including screening for symptoms, educating staff and inmates about COVID-19, cancelling visitation, quarantining new inmates, implementing regular cleaning, providing disinfectant supplies, and providing masks. The BOP initially struggled to scale up its testing capacity just before the district court issued the preliminary injunction, but even there the BOP represented that it was on the cusp of expanding testing. The BOP's

efforts to expand testing demonstrate the opposite of a disregard of a serious health risk.

*Id.* at 840–41.

In its decision, the Sixth Circuit recognized that other Sixth Circuit decisions found that similar responses by prison officials and medical personnel, such as cleaning cells, quarantining infected inmates, and distributing information about a disease in an effort to prevent spread, to be reasonable. *Id.* at 841. The *Wilson* Court also noted that other circuits had concluded that similar actions by prison officials demonstrated a reasonable response to the risk posed by COVID-19:

> In *Swain* [*v. Junior*], the Eleventh Circuit granted a stay of a preliminary injunction pending appeal on state inmates' Eighth Amendment claims. 958 F.3d [1081,] 1085 [(11th Cir. 2020) (per curiam)]. The Eleventh Circuit held that "the inability to take a positive action likely does not constitute 'a state of mind more blameworthy than negligence,'" and "the evidence supports that [Metro West Detention Center ("MWDC") is] taking the risk of COVID-19 seriously." *Id.* at 1088–90 (citation omitted). In response to the pandemic in early March, MWDC began "cancelling inmate visitation; screening arrestees, inmates, and staff; and advising staff of use of protective equipment and sanitation practices" and, after reviewing further CDC guidance, began "daily temperature screenings of all persons entering Metro West, establish[ed] a 'COVID-19 Incident Command Center and Response Line' to track testing and identify close contacts with the virus, develop[ed] a social hygiene campaign, and mandate[d] that staff and inmates wear protective masks at all times." *Id.* at 1085–86. The Eleventh Circuit held that, because MWDC "adopted extensive safety measures such as increasing screening, providing protective equipment, adopting [physical] distancing when possible, quarantining symptomatic inmates, and enhancing cleaning procedures," MWDC's actions likely did not amount to deliberate indifference. *Id.* at 1090.
>
> Similarly, the Fifth Circuit granted stays of two preliminary injunctions in *Valentine* [*v. Collier,* 956 F.3d 797 (5th Cir. 2020) (per curiam),] and *Marlowe* [*v. LeBlanc*, No. 20-30276, 2020 WL 2043425 (5th Cir. Apr. 27, 2020) (per curiam)]. In *Valentine*, inmates at Texas's Wallace Pack Unit filed a class action suit against the Texas Department of Criminal Justice ("TDCJ") alleging violations of the Eighth Amendment. 956 F.3d

at 799. In response to the COVID-19 pandemic, TDCJ had taken preventative measures such as providing "access to soap, tissues, gloves, [and] masks," implementing "regular cleaning," "quarantin[ing] of new prisoners," and ensuring "[physical] distancing during transport." *Id.* at 802. The Fifth Circuit determined that the district court applied the wrong legal standard by "collaps[ing] the objective and subjective components of the Eighth Amendment inquiry" by "treating inadequate measures as dispositive of the Defendants' mental state" under the subjective prong and held that "accounting for the protective measures TDCJ has taken" the plaintiffs had not shown deliberate indifference. *Id.* at 802–03. In *Marlowe*, the Fifth Circuit relied on its reasoning in *Valentine* and again reiterated that there was "little basis for concluding that [the correctional center's] mitigation efforts," which included "providing prisoners with disinfectant spray and two cloth masks[,] . . . limiting the number of prisoners in the infirmary lobby[,] and painting markers on walkways to promote [physical] distancing," were insufficient. 2020 WL 2043425, at *2–3.

*Wilson*, 961 F.3d at 841–42.

After reviewing the cases, the *Wilson* Court held that even if the BOP's response to COVID-19 was inadequate, it took many affirmative actions to not only treat and quarantine inmates who had tested positive, but also to prevent widespread transmission of COVID-19. The Court held that because the BOP had neither disregarded a known risk nor failed to take steps to address the risk, it did not act with deliberate indifference in violation of the Eighth Amendment. *Id.* at 843–44.

In addition, in *Cameron v. Bouchard,* 818 F. App'x 393 (6th Cir. 2020), the Court relied on *Wilson* to find that pretrial detainees in the Oakland County Jail were unlikely to succeed on the merits of their Eighth and Fourteenth Amendment claims. The plaintiffs in *Cameron* claimed that jail officials were deliberately indifferent to the substantial risk of harm posed by COVID-19 at the jail. The district court initially granted a preliminary injunction requiring the defendants to "(1) provide all [j]ail inmates with access to certain protective measures and medical care intended to limit

exposure, limit transmission, and/or treat COVID-19, and (2) provide the district court and Plaintiffs' counsel with a list of medically vulnerable inmates within three business days." *Id.* at 394. However, following the decision in *Wilson*, the Court granted the defendants' renewed emergency motion to stay the preliminary injunction, finding that the preventative measures taken by the defendants were similar to those taken by officials in *Wilson* and, thus, were a reasonable response to the threat posed by COVID-19 to the plaintiffs. *Id.* at 395. Subsequently, in an unpublished opinion issued on July 9, 2020, the Sixth Circuit vacated the injunction. *Cameron v. Bouchard*, 815 F. App'x 978 (6th Cir. 2020).

The MDOC issued a COVID-19 Director's Office Memorandum (DOM) on April 8, 2020, and issued multiple revised DOMs prior to October 2020 on the COVID-19 issue. *See* MDOC DOM 2020-30R2 (eff. May 26, 2020) (outlining specific precautions to be taken by staff members, including the use of personal protective equipment and hand sanitizer); MDOC DOM 2020-30R3 (eff. May 27, 2020); MDOC DOM 2020-30R4 (eff. Aug. 10, 2020). MDOC DOM 2020-30R5 effective Aug. 10, 2020, outlined several precautions to prevent the spread of COVID-19. The DOM provided for personal protective equipment, screening for signs and symptoms of COVID-19, social distancing, quarantine of COVID-19 positive prisoners and prisoners who had contact with COVID-19 positive individuals, other restrictions were imposed to limit contacts and potential exposure. In addition, adequate soap was provided to prisoners and bleach was authorized as determined by the Warden.

19

Daniels has failed to make any allegations against Warden Huss that could rise to the level of deliberate indifference to his serious medical needs under the Eighth Amendment.  As of October 2020, the MDOC was still learning about the COVID-19 pandemic and techniques to further prevent the spread of the virus.  The circumstances were fluid and responses were being evaluated, addressed, and modified, as expressed in the DOMs, based upon current recommendations and guidance from government and world organizations.  Daniels has not specifically set forth facts that establish that Defendant Huss knowingly subjected him to COVID-19 in deliberate indifference to the risk of harm.  Here, Daniels is only making a negligence claim.  As noted above, a claim alleging negligence fails to state an Eighth Amendment claim upon which relief may be granted.  "A plaintiff need not show that the defendant acted with the very purpose of causing harm, but must show something greater than negligence or malpractice." *Winkler v. Madison County*, 893 F.3d 877, 891 (6th Cir. 2018) (citing *Farmer*, 511 U.S. at 835); *see also Bowman v. Corrections Corp. of America*, 350 F.3d 537, 544 (6th Cir. 2003) (noting that "[m]ere negligence or malpractice is insufficient to establish an [Eighth] Amendment violation") (citation omitted)).

 In the opinion of the undersigned, Daniels has failed to allege any facts against Defendant Huss that could state a federal cause of action.

## VI. Recommendation

The undersigned respectfully recommends that this Court deny Defendant Huss's motion for summary judgment.  (ECF No. 13.)

It is further recommended that the Court dismiss the complaint for failure to state an Eighth Amendment claim or any federal claim against Defendant Huss.  It is further recommended that the Court dismiss Plaintiff's state law negligence claim without prejudice.


Dated:   April 21, 2021                          /s/ *Maarten Vermaat*
                                                 MAARTEN VERMAAT
                                                 U. S. MAGISTRATE JUDGE


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).